UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: 5/1/2020                 │
└─────────────────────────────────────┘
```

STEPHEN KLIKA,

                      Plaintiffs,

     -against-

TUCKAHOE POLICE ORGANIZATION, INC., and
VILLAGE OF TUCKAHOE,
                    Defendants.

No. 18-cv-5031 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge Román

       Plaintiff Stephen Klika brings this action against the Tuckahoe Police Organization, Inc. (the "PBA") and the Village of Tuckahoe (the "Village"), asserting claims under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301," or "§ 301"), and the New York Civil Service Law ("N.Y. Civil Service Law"). (ECF No. 17.) Plaintiff seeks monetary damages against the PBA for breach of the duty of fair representation and breach of fiduciary duty in connection with the enforcement of a Collective Bargaining Agreement ("CBA") between the PBA and the Village. Plaintiff also seeks specific performance of the Village's alleged obligations under the CBA.

       Before the Court are Defendants 'motions to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF Nos. 19 (Village) & 21 (PBA).) Plaintiff opposes the motions. (ECF Nos. 20 & 22.) For the following reasons, Defendants' motions are GRANTED.

---

[1] While the Village does not specify what statute it moves under, the Court presumes based on the arguments made in the Village's moving papers that, like the PBA, the Village moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND[2]

Plaintiff was hired as a police officer by the Village on or about May 22, 1989.  (Am. Compl. ¶ 9.)  Around June 2004, Plaintiff was promoted to police sergeant and remained in that position until the date of his retirement on or about June 1, 2009.  (*Id.* ¶¶ 10–11.)  At all relevant times, the Village and the PBA were parties to the CBA, which governed Plaintiff's employment and retirement and that of other employees of the Village's Police Department.  (*Id.* ¶¶ 12–13.)  Article 13 of the CBA provides, in pertinent part, that the Village "shall pay the full cost of the individual or family health insurance premium cost in the Empire Plan . . . upon retirement for those employees hired on or before May 31, 1990.  (*Id.* ¶ 14.)

Plaintiff does not dispute that the Village has paid the full cost of his individual health insurance premium since the date of his retirement.  In 2014, however, Plaintiff became engaged to nonparty Debra Karp.  (*Id.* ¶ 15.)  Karp then began making informal inquiries to the Village regarding her eligibility for coverage under Plaintiff's healthcare plan after marriage.  (*Id.* ¶ 16.)  On or about April 29, 2014, Karp sent an email to Susan Ciamarra, the then-Village Clerk, asking about her potential coverage.  (*Id.* ¶ 17.)  On or about May 27, 2014, Ciamarra replied to Karp, saying "[y]es, you can be covered under the plan."  (*Id.* ¶ 18.)

Over a year and a half later, around December 2015, Karp contacted Camille DiSalvo, acting Village Clerk, to confirm that Karp would be 100% covered under Plaintiff's medical plan upon her marriage to Plaintiff.  (*Id.* ¶ 19.)  However, DiSalvo could not confirm and told Karp to speak with the Assistant Treasurer of the Village.  (*Id.*)  Karp spoke to the Assistant Treasurer several times and was told that the Village Administrator took the position that she would not be covered under Plaintiff's plan.  (*Id.* ¶ 20.)

---

[2] The facts in this section are taken from Plaintiff's Amended Complaint, (ECF No. 17), unless otherwise specified.

On or about January 12, 2016, Plaintiff contacted Steve Leone, the PBA representative, who told Plaintiff he would inquire about Karp's coverage with Andrew Quinn, PBA's legal counsel. (*Id.* ¶ 22.) A year later, in or about early 2017, Plaintiff still had not heard back from Leone, so he contacted Quinn directly. (*Id.* ¶ 23.) Quinn declined to assist Plaintiff, stating that since Plaintiff was a retiree and not a working employee Quinn could not represent him. (*Id.* ¶ 24.) Plaintiff then contacted Chief Costanzo, the Chief of Police for the Village, and Costanzo confirmed that he interpreted Article 13 of the CBA to mean that Karp would be fully covered under Plaintiff's healthcare plan when she married Plaintiff. (*Id.* ¶ 25.)

On or about March 4, 2017, Plaintiff and Karp were married. (*Id.* ¶ 26.) In March 2017, Plaintiff made multiple attempts to contact Quinn by phone and email but did not receive an immediate response. (*Id.* ¶ 27.) On or about March 25, 2017, Plaintiff reached Quinn and asked him how to proceed in adding Karp to his medical plan. (*Id.* ¶ 29.) Quinn responded that he had not heard from the Village, that he was "not sure if this is a labor issue," and that Plaintiff may need to hire outside counsel. (*Id.*)

On or about December 8, 2017, Plaintiff, through private counsel, wrote to the Village in order to formally request Karp's coverage as a family member under the medical plan required by the CBA. (*Id.* ¶ 31.) On or about February 6, 2018, the Village formally notified Plaintiff that Karp would not be added to his health insurance policy, paid 100% by the Village. (*Id.* ¶ 32.) Plaintiff sought reconsideration of the Village's decision in April 2018. (*Id.* ¶ 33.) On or about April 16, 2018, the Village denied Plaintiff's request. (*Id.*) This action ensued.

**LEGAL STANDARDS**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).   "In resolving

a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in

the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir.

2014).  "[T]he court may resolve [any] disputed jurisdictional fact issues by referring to evidence

outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary

hearing." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.

2000).  Though a court "may consider affidavits and other materials beyond the pleadings to

resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained

in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  A

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists.  *See State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 77 n.4

(2d Cir. 2007); *Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d

560, 562 (2d Cir. 1996).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at

679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to

raise a right to relief above the speculative level.'" *ATSI Commc ns, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all

material factual allegations as true and draw reasonable inferences in the non-moving party's

favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual

allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of

a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In determining

whether a complaint states a plausible claim for relief, a district court must consider the context

and "draw on its judicial experience and common sense." *Id*. at 662.  A claim is facially

plausible when the factual content pleaded allows a court "to draw a reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. at 678.

## DISCUSSION

I.     **LMRA Claims**

Plaintiff brings claims against Defendants pursuant to Section 301 of the LMRA, codified

at 29 U.S.C. § 185.  (Am. Compl. ¶¶ 34–48.)  Section 301 provides a federal cause of action for

breach of a CBA.  *See* 29 U.S.C. § 185; *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 697

(1966).  Courts categorize Section 301 claims as pure or hybrid claims.  A pure Section 301

claim simply alleges that the plaintiff's employer breached the CBA.  *Hoosier Cardinal Corp.*,

383 U.S. at 705 n.7.  A hybrid Section 301 claim pairs a claim that the employer breached the

CBA with a claim that the union representing the employee failed to enforce the employee's

rights under the CBA, in breach of the union's duty to fairly represent its members.  *See White v.*

*White Rose Food*, 237 F.3d 174, 178–79 (2d Cir. 2001); *Allen v. United Parcel Service, Inc.*, 988

F. Supp. 2d 293, 298 (S.D.N.Y. 2013) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S.

151, 163–64 (1983); *Carrion v. Enterprise Ass'n*, 227 F.3d 29, 34 (2d Cir. 2000)).

Here, Plaintiff brings a hybrid action against the Village and the PBA.  However, the LMRA explicitly excludes from its protections employees who are employed by, *inter alia*, "any State or political subdivision thereof."  29 U.S.C. §§ 152(2), 152(3) (defining "employer" and "employee" for purposes of the statute); *see Baumgart v. Stony Brook Children's Serv., P.C.*, 249 F. App'x 851, 852 (2d Cir. 2007) ("The LMRA does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them.").  Accordingly, courts routinely dismiss both pure and hybrid Section 301 claims wherein an employee sues his or her municipal employer and/or the union that represents the employee for lack of subject matter jurisdiction.  *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187 (2d Cir. 2009) (citing numerous summary orders applying the principle that "public employees are not covered by [the LMRA]" and affirming dismissal of Section 301 action on that ground); *Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F. Supp. 2d 383 (S.D.N.Y. 2002) ("Courts have held that they lack subject matter jurisdiction over hybrid claims by public employees because a public employer is not an 'employer' within the meaning of the LMRA." (citing cases)).

Plaintiff provides no reason why his hybrid claim against the Village, a municipal subdivision of the state of New York, and the PBA, a union representing municipal employees, should proceed in the face of clear authority stating that this Court lacks subject matter jurisdiction over his federal claims.  Rather, Plaintiff states in conclusory terms that "federal question" provides a basis for subject matter jurisdiction.  (Pl.'s Mem. Opp. PBA's Mot. to Dismiss ("Pl.'s Opp. PBA") (ECF No. 22) at 8; Pl.'s Mem. Opp. Village's Mot. to Dismiss ("Pl.'s Opp. Village") (ECF No. 20) at 8.)  Plaintiff cites two district court cases purportedly supporting his assertion.  *See Bacchus v. City of New York*, No. 12-cv-1663, 2013 WL 1345153

(E.D.N.Y. March 19, 2013); *Gansas v. City of New York*, No. 05-cv-5484, 2006 WL 2166869

(E.D.N.Y. July 31, 2006). However, neither of those cases permitted a public employee to bring

claims against his employer and public sector union under the LMRA. Rather, the cases simply

opine that a claim sounding in breach of a union's duty of fair representation may proceed under

New York state law even against a public sector union. *See Bacchus*, 2013 WL 1345153, at *2

("Under New York law, public sector unions owe a duty of fair representation to their

members."); *Gansas*, 2006 WL 2166869, at *8 (considering whether court had jurisdiction over a

fair representation claim under New York law).

Since it is clear that Section 301 of the LMRA does not apply to public sector employees,

or hybrid actions against a public sector union and municipal employer, Plaintiff's LMRA claims

are dismissed for lack of subject matter jurisdiction.

## II.      Diversity Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court turns to the question of

whether it maintains original jurisdiction over Plaintiff's state law claims on the basis of

diversity jurisdiction. To preserve judicial resources, federal courts have limited subject matter

jurisdiction over disputes between citizens of different states. 28 U.S.C. § 1332. "The intent of

Congress drastically to restrict federal jurisdiction in controversies between citizens of different

states has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red

Cab Co.*, 303 U.S. 283, 289–90 (1938). Diversity jurisdiction exists when the parties are diverse

and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

The parties do not dispute that the diversity of citizenship element is met.[3] However,

Defendants argue that Plaintiff fails to adequately plead that the amount in controversy in the

---

[3] Plaintiff is a citizen and resident of North Carolina, the Village is a municipality of New York state, and the PBA is a labor organization with offices in Tuckahoe, New York. (Am. Compl. ¶¶ 5–7.)

litigation before this Court exceeds $75,000.  To survive a motion to dismiss, the party asserting

diversity jurisdiction, which is the Plaintiff in this case, must plausibly establish the existence of

diversity jurisdiction.  *See Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994).

When analyzing whether the amount in controversy requirement of diversity jurisdiction

is satisfied on a motion to dismiss, the sum claimed by the plaintiff controls if that claim is

apparently made in good faith.  *St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 (1938).  "It

must appear to a legal certainty that the claim is really for less than the jurisdictional amount to

justify dismissal."  *Id.* at 289.  Where a party opposing jurisdiction makes such a showing, a

conclusory statement by a party that the amount in controversy is met is insufficient to support

subject matter jurisdiction.  *See Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 192 (D. Conn.

2014) (granting the defendant's 12(b)(1) motion "[g]iven the fact that the Plaintiff's only

allegation tending to establish the amount in controversy is the generic claim in the Complaint

that the amount 'exceeds $75,000.00 exclusive of interest and costs' is . . . unsupported by the

record"); *John Wiley & Sons, Inc. v. Glass*, 10-CV-598(PKC), 2010 WL 1848226, at *3

(S.D.N.Y. May 7, 2010) (suggesting that a conclusory statement that the amount in controversy

is met is insufficient to survive a motion to dismiss); *Johnson-Kamara v. W. Chacon Trucking*,

05-CV-9900, 2006 WL 336041, at *3 (S.D.N.Y. Feb. 9, 2006) (holding that the defendants failed

to show that the federal court had subject matter jurisdiction because they "make only the

conclusory statement that the amount in controversy exceeds $75,000").

In addition to considering any direct statement of the amount in controversy, courts

should consider the value of the relief that the petitioners seek in determining whether the

complaint satisfies the requirements for diversity jurisdiction.  *See Am. Standard, Inc. v.

Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007); *Team Obsolete Ltd. v. A.H.R.M.A.*

*Ltd.*, 01-CV-1574(ILG), 2005 WL 2148981, at *4 (E.D.N.Y. Sept. 7, 2005). For cases in which the plaintiff requests declaratory or injunctive relief rather than monetary damages, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

Here, Plaintiff states that "[t]he matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." (Am. Compl. ¶ 3.) Specifically, Plaintiff claims he is entitled to "monetary damages resulting from the Village's failure to add Plaintiff's wife to his medical plan with full costs paid for by the Village," and injunctive relief requiring the Village to add Plaintiff's wife to his medical plan with full costs paid for by the Village. (*Id.* ¶ 55, pp. 9–10.) Based on Plaintiff's factual allegations, the value being sought consists of medical benefits claimed by his wife since their marriage on March 4, 2017, as well as the value of future coverage for his wife under his medical plan.

Plaintiff does not provide any information that would allow the Court to gauge the value of the family medical benefits he claims he is owed in the year before he initiated this action,[4] or the value of future benefits. Nonetheless, "[t]here is a high bar for overcoming" the presumption that Plaintiff has made a good faith representation of the actual amount in controversy. *Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 241 (E.D.N.Y.) (2015); *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." (quotation marks omitted) (internal brackets omitted) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982))). The Court cannot conclude at this juncture, to a legal certainty, that the amount recoverable in this action

---

[4] Courts must measure the amount in controversy as of the date of the complaint. *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

does not meet the jurisdictional threshold.  Accordingly, the Court finds that it has subject matter

jurisdiction over Plaintiffs' state law claims on the basis of diversity jurisdiction.

## III.    State Law Claims

Plaintiff brings state law claims for breach of contract, breach of the duty of fair

representation, and breach of fiduciary duty[5] arising under N.Y. Civil Service Law § 209-a

("Section 209-a" or "§ 209-a").[6]  Section 209-a "makes unlawful various practices by a public

employer or an employee organization, including unions."  *Ifill v. New York State Court Officers

Ass'n*, 655 F. Supp. 2d 382, 392 (S.D.N.Y. 2009).  While the N.Y. Civil Service Law provides

the Public Employment Relations Board ("PERB") with "exclusive nondelegable jurisdiction"

over claims of improper labor practices as provided in Section 209-a, *see* N.Y. Civil Service Law

§ 205(5)(d), there is an exception to PERB's exclusive jurisdiction when a claim is for a union's

breach of the duty of fair representation.  *See Ifill*, 655 F. Supp. 2d at 392 n.2; *Bacchus v. New

York City Dep't of Educ.*, 137 F. Supp. 3d 214, 249 (E.D.N.Y. 2015); *Giacopelli v. Incorporated

Village of Malverne*, 829 F. Supp. 2d 131, 147–48 (E.D.N.Y. 2011).  PERB likewise lacks the

"authority to enforce an agreement between an employer and an employee organization and shall

not exercise jurisdiction over an alleged violation of such an agreement that would not otherwise

constitute an improper employer . . . practice."  N.Y. Civil Service Law § 205(5)(d); *see Evans

Deposit Cent. Sch. Dist.*, 31 N.Y.S.3d 274, 276 (App. Div. 2016).

---

[5] Plaintiff's fiduciary duty claim is identical to his duty of fair representation claim, and is more properly cast as the latter.  *See Coleman v. City of New York*, No. 99-CV-1159, 1999 WL 1215570, at *2 n.1 (E.D.N.Y. Dec. 7, 1999).  Accordingly, the Court's treatment of Plaintiff's duty of fair representation claim also applies to Plaintiff's fiduciary duty claim.

[6] Plaintiff purports to bring all remaining claims "under N.Y. Civil Service Law."  (Am. Compl. at 7–9.) However, a liberal reading of the Amended Complaint indicates that Plaintiff also intends to proceed under state common law in asserting breach of the CBA by the Village.  (Am. Compl. ¶¶ 60–62.)  To the extent the sixth cause of action in the Amended Complaint can also be read to assert a claim for tortious interference with contract, (*id.* ¶ 63), such claim is deemed withdrawn in light of Plaintiff's assertion that "the issue [in this action] is a breach of contract with an employee," and that the sixth cause of action does not sound in tort.  (Pl.'s Opp. Village at 12.)

Generally, New York courts have held that a public employee has no right to sue his employer under a collective bargaining agreement, as his remedy for breach thereof is "limited to the grievance procedure set forth therein." *Parisi v. New York City Housing Auth.*, 703 N.Y.S.2d 446, 446 (App. Div. 2000). However, a public employee may demonstrate a right to sue under the collective bargaining agreement by showing that his representative union breached its duty to represent him fairly, or that the collective bargaining agreement otherwise permits a direct action against the employer. *See, e.g.*, *id.*; *Buff v. Village of Manlius*, 983 N.Y.S.2d 145, 146–47 (App. Div. 2014); *Lundgren v. Kaufman Astoria Studios, Inc.*, 690 N.Y.S.2d 609, 610 (App. Div. 1999); *Clark v. County of Cayuga*, 623 N.Y.S.2d 57, 57–58 (App. Div. 1995) ("Unless the agreement provides otherwise, only when the union fails to represent an employee fairly may the employee go beyond the agreed upon procedure and commence a breach of contract action directly against the employer." (citing *Matter of Bd. of Ed., Commack Union Free Sch. Dist. v. Ambach*, 70 N.Y.2d 501, 508 (1987))). A collective bargaining agreement so permits when the contract "either expressly allows such suits or implicitly does so by excluding the dispute at issue from, or not covering it within, the ambit of the contractual dispute resolution procedures." *Buff*, 983 N.Y.S.2d at 147 (quotation marks omitted) (citation omitted).

Defendants argue that Plaintiff's state claims fail for a series of reasons. First, Defendants state that Plaintiff's claims are barred by the applicable statute of limitations. Second, Defendants argue that Plaintiff, as a retiree, lacks standing to sue the PBA. Finally, Defendants contend that the substance of the Amended Complaint is legally insufficient to state a claim upon which relief can be granted. Since the Court finds that all of Plaintiff's state law claims must be dismissed on statute of limitations grounds, the Court does not reach Defendants' remaining arguments.

a.      **Statute of Limitations on Claims Against PBA**

Plaintiff's claims under the N.Y. Civil Service Law have a four-month statute of limitations: "Any action or proceeding against an employee organization . . . which complains that such employee organization has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later." N.Y. C.P.L.R. § 217(2)(a). Thus, "[i]n cases where a union member alleges a breach of the duty of fair representation because the union refused to participate in a grievance process, a plaintiff's claim '[accrues] at the time [the union member] "knew or should have known"' of the union's refusal to assist him.'" *Jones v. Int'l Union of Operating Engineers*, 155 F. Supp. 3d 191, 210 (N.D.N.Y. 2015), *aff'd* 671 F. App'x 10 (2d Cir. 2016) (quoting *Bitterman v. Herricks Teachers' Ass'n*, 632 N.Y.S.2d 173, 174 (App. Div. 1995)). Plaintiff filed this action on June 6, 2018. (ECF No. 1.) Thus, for his duty of fair representation claim to be timely, it must have accrued on or after February 6, 2018.

As to when Plaintiff knew or should have known of the PBA's breach of their duty to fairly represent Plaintiff, Defendants argue that Plaintiff should have known as of March 25, 2017, when the PBA's counsel indicated he was "not sure if this was a labor issue" and that Plaintiff "may need to hire outside counsel." (Am. Compl. ¶ 29.) In addition, in early 2017 PBA's counsel had "refused to assist [Plaintiff] stating that since [Plaintiff] was retired and not currently a working employee he could not represent [Plaintiff]." (*Id.* ¶ 24.) Plaintiff states that because the March 25, 2017, communications were "not a formal demand," and the PBA counsel's response was not an unequivocal refusal to represent him, he did not and should not

have known of the PBA's breach at that time.  (Pl.'s Opp. PBA at 11.)  Nonetheless, nine months

later, Plaintiff retained private counsel to "formally proceed on the issue of the request that [his

wife] would be covered as a family member under the medical plan required by the CBA" on

December 8, 2017.  (Am. Compl. ¶ 31.)

Plaintiff should have known that the PBA breached a duty of fair representation it owed

to Plaintiff in early 2017, when PBA counsel "refused to assist" Plaintiff and told him that the

PBA "could not represent" him mere months before his wedding.  Plaintiff nonetheless

continued to reach out to PBA counsel and was told on March 25, 2017, that this was not a labor

issue and that Plaintiff would likely need to hire outside counsel.  The Court understands that

Plaintiff is essentially asserting that the March 25, 2017, communications were suggestions that

the PBA thought it *might* not be able to represent Plaintiff, and did not make sufficiently clear

that the PBA actually would refuse to represent Plaintiff.  However, it cannot be disputed that

PBA counsel's early 2017 representations amounted to an unequivocal refusal to represent

Plaintiff in the matter of his wife's insurance coverage.  Nothing in the March 25, 2017,

communications, which were made very shortly after the early 2017 representations, suggests

that the PBA subsequently changed its mind.

Moreover, whether or not Plaintiff subjectively understood that the PBA was refusing to

represent him in grieving the matter of his wife's medical coverage as of March 2017, it is clear

that he did understand as of December 8, 2017.  Plaintiff's awareness is demonstrated by his

hiring private counsel and filing a formal request[7] for medical coverage with the Village through

---

[7] Plaintiff now maintains that his written request was not a "formal demand" but an "inquiry on how to
proceed in adding" his wife to his insurance policy.  (Pl.'s Opp. Village at 11.)  The Amended Complaint,
conversely, states that the December 8, 2017, communication was addressed to "formally proceed[ing] on the issue
of the request that Karp would be covered as a family member under the medical plan required by the CBA."  (Am.
Compl. ¶ 31.)  In any event, the distinction Plaintiff attempts to draw is without meaning here.  Plaintiff's last

such counsel.  In light of the foregoing, Plaintiff's claim that he was not and should not have been aware of the PBA's breach of its duty to represent him until the Village denied his formal application for benefits on February 6, 2018, rings false.  *See Ifill*, 655 F. Supp. 2d at 394 (four-month statute of limitations for denial of fair representation claim under N.Y. Civil Service Law began to run on date that state employee was allegedly forced to resign by his union, rather than the date he was notified that his application for reinstatement had been denied).

Finally, the record is clear that Plaintiff suffered alleged harm well before the Village "formally" rejected his request to add his wife to his insurance plan.  To be sure, Plaintiff seeks medical benefits due to his wife from the date of their marriage in March 2017.  While Plaintiff indicates he was confused as to whether his wife would be covered in light of different messages the couple had received over the three years prior to his marriage, Plaintiff could not have been unaware that he was "pay[ing] out of pocket for his wife's medical benefits," (Pl.'s Opp. PBA at 2), during their nearly twelve months of marriage prior to his receipt of the Village's rejection notice.

For the foregoing reasons, the Court finds that the statute of limitations on Plaintiff's state claims against the PBA began to run, at the very latest, on December 8, 2017, when Plaintiff had suffered injury and, by proceeding through private counsel, demonstrated his clear understanding that the PBA refused to represent him.  Accordingly, this action, commenced approximately six months later, was not timely filed.  Plaintiff's state claims against the PBA must be dismissed on this ground.

---

communication with the PBA was in March 2017, around the time he married his wife.  In that conversation, the PBA's counsel suggested that he did not believe the PBA could represent Plaintiff in obtaining medical benefits from the Village.  Nine months later, Plaintiff hired private counsel to pursue his claim for benefits against the Village.  It is disingenuous to suggest that, at that point, Plaintiff continued to believe that the PBA would investigate and file a grievance on his behalf.

### b.      Statute of Limitations on Claims Against the Village

Courts in New York have held that a former employee's claim seeking damages flowing from a municipal employer's breach of a collective bargaining agreement must be resolved through application of traditional rules of contract law.  *See Giblin v. Village of Johnson City*, 906 N.Y.S.2d 157, 159 (App. Div. 2010); *Gooshaw v. City of Ogdensburg*, 889 N.Y.S.2d 722, 724 (App. Div. 2009).  To that end, courts have held that a six-year statute of limitations applies to an employee's breach of contract claims against his or her former employer.  *See Gooshaw*, 889 N.Y.S.2d at 724 (claims of retirees seeking health insurance payments under collective bargaining agreement were subject to six-year statute of limitations).

However, to reach to the statute of limitations question as to Plaintiff's claims against the Village, the Court must determine that Plaintiff may proceed directly against the Village in the absence of a claim that the PBA failed to provide him fair representation.  As the Court has outlined, such permission may only be granted if the CBA expressly allows direct suits such as Plaintiff's or implicitly does so by excluding or omitting Plaintiff's claims from contractual dispute resolution procedures.  For example, some New York appellate courts have allowed retirees seeking health insurance benefits or other monetary benefits guaranteed under a collective bargaining agreement to proceed against their former public employers where the agreement only permitted active employees or union members to participate in the grievance process.  *See Buff*, 983 N.Y.S.2d at 147–48; *Gooshaw*, 889 N.Y.S.2d at 724 n.3.[8]

Plaintiff has presented no argument why his claims against the Village should be allowed to continue in the absence of a representational claim against the PBA.  To be sure, Plaintiff's submissions indicate that he agrees with Defendants that his breach of contract claims hinge

---

[8] However, as discussed herein, no party has cited to this line of authority or even suggested that it may be applicable to the instant matter.

exclusively on the viability of his duty of fair representation claims, and that all of his state law claims, by virtue of this connection, are subject to a four-month statute of limitations. (*See* Pl.'s Opp. Village at 10–11; Pl.'s Opp. PBA at 10–11.)

Since all parties agree that Plaintiff's state breach of contract claim against the Village rise and fall with his state claims against the PBA, and all state claims against the PBA have been dismissed as untimely, Plaintiff's only remaining claim against the Village is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are GRANTED, and the Amended Complaint is dismissed in its entirety. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 19 and 21 and close the case.

Dated:   May 1, 2020                                     SO ORDERED:
        White Plains, New York

 

NELSON S. ROMÁN
United States District Judge